UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2018 MAY 22  AM 11: 48

CLERK
BY_____
DEPUTY CLERK

| | | |
|---|---|---|
| BARBARA MCGREW, LYNN | * | Civil Action No. 5:18 cv 59 |
| MARTIN, MICHAEL LONG, | * | |
| and STEVEN GOODKIND, | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | |
| | * | |
| CITY OF BURLINGTON, | * | |
| VERMONT,  DEVONWOOD | * | |
| INVESTORS, LLC, and | * | |
| BTC MALL ASSOCIATES, LLC, | * | |
| Defendants | * | |

## CROSS MOTION IN SUPPORT OF PARTIAL SUMMARY JUDGMENT

The plaintiffs cross-move for partial summary judgment for a declaratory

judgment under the federal Civil Rights Act, 42 U.S.C. §1983, that

(i) the City of Burlington's failure to provide them with actual notice of BTC Mall's permit amendments application and timely notice of the City's approval of them violated the Due Process clause of the 14th Amendment;

(ii) the February 23, 2018 permit amendments are consequently unlawful and void; and

(iii)  due process requires the City in the future to provide the plaintiffs with actual notice of any proposed future local land use amendments to the project, with timely actual notice of any administrative action taken on the amendment applications, and timely actual notice of any applications for certificates of occupancy, all sufficient to allow plaintiffs to exercise their full rights to contest same under 24 V.S.A. § 4472 or otherwise.

1

## MEMORANDUM IN SUPPORT OF CROSS-MOTION
## AND IN OPPOSIITON TO MOTION TO DISMISS[1]

**FACTS**

These plaintiffs had brought a series of legal challenges to the redevelopment as

proposed of the former Burlington Square Mall at 75 Cherry Street in Burlington, now

referred to as *CityPlace Burlington.*

> • Barbara McGrew individually and Steven Goodkind on his own behalf and on
> behalf of a group of individuals had brought an appeal in *Devonwood Investors,*
> *LLC (75 Cherry Street)*, Vermont Superior Court, Environmental Division,
> Docket Number 39-4-17 Vtec regarding the local land use approval issued by the
> Burlington Development Review Board (DRB) on March 17, 2017 to Devonwood
> Investors, LLC on behalf of the property owner BTC Mall Associates, LLC.
>
> • Barbara McGrew individually brought the appeal *Devonwood Investors, LLC JO*
> *4-255*, Vermont Superior Court, Environmental Division, Docket Number 63-5-
> 17 Vtec claiming that Act 250 had jurisdiction to also review the proposal.
>
> • Steven Goodkind, Michael Long and Lynn Martin in Counts I, II, and III of
> *Long et. al. v. City of Burlington et. al.* Vermont Superior Court, Civil Division,
> Docket No. 996-11-16 Cncv brought a taxpayer challenge to $22 million in Tax
> Increment Financing (TIF) provided by State and City property taxpayers to BTC
> Mall Associates to subsidize the project, and in Count IV of that action also as
> individual plaintiffs challenged a denial of a request for public records regarding
> that subsidy.

These claims were all settled and compromised in a global *Settlement Agreement* between

the plaintiffs and Devonwood mediated by former Burlington Mayor Peter Clavelle. The

three legal actions were each dismissed by the plaintiffs with prejudice and/or they

individually withdrew as per the *Settlement Agreement*. This allowed the project to

---

[1] By introducing materials outside of the pleadings, Devonwood and BTC Mall Associates have by
operation of F.R.Civ.P. 12(d) presented a motion for summary judgment rather than one for failure to state
a claim under F.R.Civ.P. 12(b)(6) as styled. In so doing they have failed to supply the Statement of
Undisputed Facts required by Local Rule 56(a), and have failed to support such a Statement with affidavits
or declarations or with documents which are properly authenticated by affidavits or otherwise as required
by F.R.Civ.P. 56(c)(1)-(4).

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

proceed by summer of 2017 without further court delays, including upon information and belief, to obtain financing.

That *Settlement Agreement* provided for additional permit conditions "consistent with changes to mitigate concerns raised by Appellants by adding subsurface parking capacity for approximately 200 automobiles in the Project." Paragraph 3 of the *Settlement Agreement* provided that

> the Applicant and appellants thereto shall promptly file a *Stipulation for Final Judgment*, along with a *Proposed Judgment Order*, to the Court approving the project consistent with changes to mitigate concerns raised by Appellants by adding subsurface parking capacity for approximately 200 additional automobiles in the Project. They agree that the total number of automobiles accommodated will depend on engineering and other constraints including that subsurface parking will not extend below one level and will not be included in the buildings constructed at or above ground.

Concomitantly, the *Stipulated Findings of Fact Supporting Final Judgment* provided

> 1.   Appellant and Appellees have entered into a settlement regarding issues in dispute in this docket.  The agree to mitigate concerns raised by the Appellant by adding subsurface parking capacity for approximately 200 additional automobiles in the Project, with the total number of automobiles accommodated to depend on engineering and other constraints including that the subsurface parking will be in the existing cellar level of the Project.

The *Proposed Judgment* Order which was signed by the Court as a consent judgment order provided

> …the court approves the Devonwood Investors, LLC 75 Cherry Street Project as approved by the City of Burlington DRB on March 17, 2017 and modified by Exhibit 1, adding parking for approximately 200 automobiles in the Project's basement level (emphasis added).

The City of Burlington amended the *Settlement Agreement* and the *Judgment Order* on February 23, 2018 using the device of an *ex parte* administrative permit amendments without any public input whatsoever and without actual notice to the

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

plaintiffs. Burlington's administrative officer subsequently submitted a communication to the City Council on April 16, 2018 in which he did not dispute that such changes had been made, admitting that the amendments added 43 thousand sf of housing to accommodate an increase from 272 to 288 units, and stating that the parking floor area was being "reduced by +- 50,000 square feet overall..." The plaintiffs contend that he significantly minimized the actual changes. Their claim is that these amendments

 • eliminate the additional cellar level floor of parking agreed-to by the parties and ordered by the Environmental Division;

 • cut over 129 thousand square feet of parking floor area overall, the equivalent of 1.7 floors of the 5 floors of on-site parking in the Mayor Clavelle-mediated settlement;

 • thereby leave less parking floor area than had been required for the project when they took their appeal from the DRB;

 • include spaces which are intended to substitute for these cellar-level spaces "in the buildings constructed at or above ground," in violation of Settlement Agreement ¶3;

 • give Devonwood/ BTC Mall "credit" for 67 phantom spaces which will not exist;

 • cram 205 cars into the aisles like sardines, calling them "valet spaces," akin to a hotel putting cots in the hallways and calling them rooms;

 • have a large majority of the spaces which do not comply with the dimensional requirements of the ordinance at all;

 • have no "porte cochere" whatsoever for valet parking in the approve floor plans, the vehicle staging area and the spot where patrons leave or claim their vehicles; and

 • were undertaken with no transparency, and in violation of the condition of approval ¶4 of the DRB permit that such changes must be approved by the DRB, including without any analysis of the effect this will have on delay times in parking and retrieving vehicles, any traffic analysis of the resulting backups into the adjoining streets, and any analysis of the diminution in use of the facility because of an unacceptable level of service.

4

What is undisputed is that this was a change in the previously negotiated and court-ordered permit conditions.

## ARGUMENT

### The Question Presented:  Did 14th Amendment Procedural Due Process Require the City of Burlington to Give Plaintiffs Actual Notice of the Permit Amendments?

Plaintiffs are not before this Court asking it to weigh in on the merits of these permit amendments. The challenge here "is entirely collateral to (the) substantive claims" regarding the permit amendments. *Mathews v. Eldridge*, 424 US 319, 332 (1976). The City's *ex parte* action stymied the plaintiffs' ability to bring their objections administratively before the Burlington Development Review Board and then if necessary to the Vermont Superior Court Environmental Division. Absent grant of the declaratory relief being requested on due process grounds, the merits have been decided for them. The question presented by the *Complaint* is whether 14th Amendment procedural due process required the City of Burlington[2] to give the plaintiffs actual notice of the project amendments being proposed and approved, the failure of such notice renders the permit amendments invalid, and thereby requires the City to restart the amendment approval and appeal process.

---

[2] The §1983 claim is against the City of Burlington, not Devonwood or BTC Mall Associates as asserted in their *Motion to Dismiss*. They were included as interested party defendants under F.R.Civ.P. 19(a)(1) because the relief sought includes a declaratory judgment to have their February 23, 2018 permit amendments declared invalid.

5

## I.   THE PLAINTIFFS HAVE A PROPERTY INTEREST IN THE BENEFIT OF THEIR BARGAIN.

### A.   The "Existing Rules and Understandings" Provided by Vermont Law.

The plaintiffs' interest in enforcing the benefit of their bargain and a continuation of its conditions and provisions is a property right created by Vermont law protected by procedural due process. Property interests are created and their dimensions are defined from existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and support their claims of entitlement to those benefits. *Board of Regents v. Roth*, 408 U.S. 564, 575-78 (1972); *Perry v. Sinderman*, 408 U.S. 593, 602-603 (1972); *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). Whether there is a property interest depends on state law. *Roth* at 577; *Burroughs v. West Windsor School Board*, 138 Vt. 575, 578 (1980). "(P)roperty interests subject to procedural due process protection are not limited by a few rigid technical forms." *Perry* at 601. They include interests arising out of "existing rules and understandings" rather than "the wooden distinction between 'rights' and 'privileges.'" *Roth* @ 577; *Burroughs, supra.* To have a property interest protected by due process a person must have more than an abstract need to desire for it. S/he must have a legitimate claim of entitlement to it a reliance upon which must not be arbitrarily undermined. *Loudermill* at 546 citing *Roth* at 577.

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

1)    The  Plaintiffs'  contract  rights  under  their  *Settlement Agreement.*

a)  To the consideration for their settlement which dismissed all outstanding claims and allowed the project to proceed.

Like the contract-based expectation of job security in *Loudermill, supra, Burroughs, supra, Quinn v. Grimes,* 2004 VT 89, 177 Vt. 81, and *Bowles v. Robbins,* 359 F. Supp. 249, 255 (D. Vt. 1973), plaintiffs have a property interest in their *Settlement Agreement* and of the resulting consent judgment. "The settlement here allowed the applicant to proceed with a project that might have been stalled, modified, or defeated, but for the settlement." *In re Dunkin Donuts,* 2008 VT 139, ¶¶14-16, 185 Vt. 583. Here the consideration contained in the *Settlement Agreement* resolved three lawsuits: (i) Ms. Martin's, and Messrs. Long's and Goodkind's the challenge to $22 million in property tax subsidies for the project, (ii) the group appeal and Ms. McGrew's individual appeal of the DRB approval, and (iii) Ms. McGrew's claim that the project was subject to Act 250 review. The defendants would now like to proceed as of none of this mattered.

Settlement agreements are sacrosanct. They are the glue which holds the judicial system together.  Without them, the system would collapse under the weight of having to litigate to conclusion each and every dispute.

b)  The condition precedent of plaintiffs' written approval of any modification.

Justice Burgess' concurrence in *Dunkin Donuts, supra* urged a rule that a party to a stipulated zoning judgment not be allowed to undo that agreement without the consent of the other parties. "Otherwise, no party in opposition to a permit application would risk compromise to settle litigation, for fear the other party has its fingers crossed behind its

7

back." Unlike in *Dunkin Donuts,* the *Settlement Agreement* here has an express contractual condition precedent which protects against "fingers crossed behind the back." Paragraph 9 stipulates that it "may not be amended, modified, or terminated except by written consent signed by all the parties hereto." Therefore plaintiffs have a specific property interest in enforcing that contractual condition precedent under *Loudermill, Perry,* and *Roth.*

c) **The obligations of the implied covenant of good faith and fair dealing attendant the settlement regarding the cellar-level parking.**

Implied contractual obligations also constitute a recognized property interest protected by procedural due process. *Perry, supra,* at 601-02. Devonwood and BTC Mall's amendments violated the implied covenant of good faith and fair dealing that accompanies the *Settlement Agreement. Carmichael v. Adirondack Bottled Gas*, 161 Vt. 200, 208, (1993) [The purpose of the implied covenant is to ensure that each party will not do anything to undermine or destroy the other's rights to receive the benefits of the agreement]; *Century Partners, LP v. Lesser Goldsmith Enterprises*, 2008 VT 40, ¶¶20-21, 184 VT 215 ["'The duty of good faith arises because the parties to a contract, once executed, have entered into a *cooperative relationship* and have abandoned the wariness that accompanied their contractual negotiations'" quoting, *Metro Ventures LLC v. GEA Assoc.*, 717 N.W.2d 58 ¶36, emphasis original].

These City-approved amendments altogether eliminated the agreed-to additional cellar-level floor of parking. The implied covenant is particularly relevant under ¶3 of the *Settlement Agreement* whether the limitation or elimination of the cellar level of parking

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

is due to bona fide engineering and other factors which were not foreseeable at the time of the *Agreement* – a contract question Devonwoon/BTC Mall do not get to resolve unilaterally. Plaintiffs therefore have a contract-based property interest in vindicating the implied covenant as it applies to the elimination of the cellar level of parking. *Perry, supra.*

### d) The bargained-for conditions regarding cellar-level parking.

The undersized "valet" parking spaces under the City-approved amendments which are purported to substitute for some of these lost these cellar-level spaces will be built "in the buildings constructed at or above ground." This specifically violates *Settlement Agreement* ¶3 as already discussed above.

### 2) The plaintiffs' rights to finality.

Where a settlement agreement is incorporated into an order of dismissal, *res judicata* prevents collateral attack of the order. *Bidgood v. Town of Cavendish*, 2005 VT 64, ¶¶6-7, 179 Vt. 530; *In re Estate of Cartmell*, 120 Vt. 234, 240 (1958) ["As a general rule one may be estopped by an agreement or stipulation made in a judicial proceeding"]. *Res judicata* prevents relitigation of the subject matter that was central to the litigation and that the settlement agreement resolved, including claims that the parties should have raised in the previous proceeding. *Bidgood, supra.* The same is true of settlement agreements in zoning cases.

> We have often indicated that a stipulated agreement incorporated into a court order has *the same* preclusive effect as a final judgment on the merits….Environmental Court consent judgments have *the same* effect as final judgments on the merits, and the successive-application doctrine is the appropriate method of seeking relief from a final zoning decision.
> *Dunkin Donuts, supra* at ¶12 (emphasis original).

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

The source of the *res judicata* effect of a settlement agreement and consent judgment in zoning cases is statutory, found in the exclusive remedy provisions of the Vermont Planning Act, 24 V.S.A. § 4472(d). They render final any unappealed-from zoning action. They provide that "all interested persons affected shall be bound by that decision or act of that officer…and shall not thereafter contest, either directly or indirectly, the decision or act…"]. *City of South Burlington v. Vermont Department of Corrections,* 171 Vt. 587 (2000); *City of Rutland v. McDonald's Corp.*, 146 Vt. 324, 330-31 (1985); *Harvey v. Town of Waitsfield,* 137 Vt. 80 (1979). This statute was "an unmistakeable intent by the Legislature 'to limit zoning disputes to a well-defined procedure and to provide finality at the end of the proceedings.'" *In re Appeal of Hildebrand*, 2007 VT 5, ¶11, 181 Vt. 568.

As quoted above in *Dunkin Donuts*, in zoning cases the question of *res judicata* is substantively resolved through application of the successive application doctrine. Also see *Hildebrand, supra; In re Application of Lathrop*, 2015 VT 49, ¶55.  The successive application doctrine recognizes that on one hand there must be some level of certainty in the zoning and use of land because "allowing changes in zoning applications without according respect to prior denials would encourage erratic, unpredictable land use," *Id.* at ¶10 On the other hand it is more flexible than traditional claim and issue preclusion principles, "that allows changes in proposals or permits without destroying the finality of decisions on which both interested parties and the public rely." *Lathrop,* supra at ¶59. The doctrine uses the criteria of the Act 250 case *In re Stowe Club Highlands,* 166 Vt. 33, 39 (1996): for when amendments will be allowed: whether there are (a) changes in

10

factual or regulatory circumstances beyond the control of the permittee; (b) changes in the construction or operation of the permittee's project not reasonably foreseeable at the time the permit was issued; or (c) changes in technology. *Hildebrand* at ¶7. The foreseeability standard is a high one.

> Rarely will a large scale development…progress exactly as planned. Contracts often fall through and financial or other restraints may require some parts of a project to be eliminated or downsized. In this sense, foreseeability is related to the degree of change. While small or moderate changes are expected and even common, extreme changes will likely come as a surprise to all involved. Permit applicants should consider foreseeable changes in the project during the permitting process, and not suggest conditions that they would consider unacceptable should the project change slightly. *Stowe Club Highlands* at 39.

### 3)      Plaintiffs' standing to vindicate these interests.

We need look no further than *Dunkin Donuts, supra* to see that plaintiffs indeed have standing before the Environmental Division of the Vermont Superior Court to vindicate these interests. There, in 2001, Cumberland Farms appealed the Montpelier Planning Commission's site plan approval of a drive-through window for Dunkin Donuts to the Environmental Court. In 2003 Cumberland Farms entered into a settlement agreement and consent judgment with Dunkin Donuts on the condition that there would be no "drive-up service window or drive-through window." *Dunkin Donuts, supra* at ¶3. Then in 2006-07 Dunkin Donuts tried another bite at the apple, obtaining an amended site plan from the Montpelier Development Review Board which included a drive-through window. "(A)gain, Cumberland Farms appealed the decision to the Environmental Court." There Cumberland Farms obtained summary judgment that Dunkin Donuts was bound by its 2003 stipulation which "barred (it) reapplying for a drive-through window," *Id.* ¶¶4-5, a decision affirmed by the Vermont Supreme Court.

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

**B.   These "Existing Rules and Understandings" Under Vermont Law All Combine to Create A Property Interest or Interests Protected by 14th Amendment Procedural Due Process.**

This puts the plaintiffs in a fundamentally different situation than the plaintiffs in *Fusco v. Connecticut*, 815 F.2d 201, 206-06 (2nd Cir. 1987) cited by the defendants. As plaintiffs in *Long et. al. v. City of Burlington et. al.* Vermont Superior Court, Civil Division, Docket No. 996-11-16 Cncv, Ms. Martin, and Messrs. Long and Goodkind, brought a taxpayer derivative action, *Osier v. Burlington Telecom*, 2016 VT 42, ¶34, to contest the legality of the $22 million tax increment financing subsidy for the project, and settled that challenge based on the consideration provided by Devonwood. As an adjoining landowner Ms. McGrew contested an administrative determination that Act 250 was without jurisdiction to review the project, and settled that contest based on the consideration provided. All the plaintiffs here were qualified as "interested parties" as defined by 24 V.S.A. § 4465(b)((3) and (4) who brought the appeal from the DRB decision to the Environmental Division, and settled that appeal based upon the consideration provided.

The *Fusco* plaintiffs by contrast were simply adjoining or nearby property owners who claimed a right to actual individual notice at the *outset* of the zoning proceedings, before any participation in them, and based on that status alone. They had not participated in the zoning appeal process. They had not brought any court appeal as qualified "interested parties." They had no other pending legal challenges to the project which were settled. They had in hand no settlement agreement. They had no consent judgment from a court. They had no state-law recognized interest in finality that could be asserted against subsequent amendment applications. Their interest was consequently held to be

12

"purely procedural" and not giving rise to an independent interest protected by the 14th amendment.

Unlike *Fusco,* Burlington's and Devonwood's/BTC Mall's actions here involve "the withdrawal of direct benefits" of the plaintiff's bargain, *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 786-87 (1980). Just as *Dunkin Donuts* was an effort through a successive permit amendment to undo the settlement agreement and stipulated judgment regarding the drive through window, Devonwood's/BTC Mall's amendments approved by Burlington here withdrew the benefits of the negotiated provisions of the *Settlement Agreement* and consent judgement regarding "the subject matter that was central to the litigation which the settlement agreement resolved," *Bidgood,* supra: the project's size and composition, the project-created demand for parking, the onsite parking supplied, and the relationship to the surrounding downtown.

Devonwood's/BTC's citation to *Robbins v. U.S. Bureau of Land Management*, 438 F.3d 1074, 1078-79 (10th Cir. 1986) is a far cry for the facts here and actually supports the due process relief being sought by the plaintiffs. There was no "finality" to the BLM settlement agreement. On the contrary, it was simply a mutually agreed-to interim "time out," an agreement to stay 16 enforcement action by the BLM for illegal grazing. It was subject to the BLM's reserved right to declare that the stay was of no further force and effect if the illegal grazing continued. BLM subsequently gave Robbins *actual notice* that it claimed that illegal grazing *was* in fact continuing. Robbins then had an administrative review with BLM's Director's Office.  BLM thereupon gave Robbins another *actual notice* confirming that the settlement agreement was of no further force

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

and effect, and issued a formal Notice of Proposed Decision under 43 C.F.R. §§4140.1(b) and 4160.1.

Instead of this kind of actual notice, afoot here in the present case was omission and stealth as discussed next.

## III    PROCEDURAL DUE PROCESS REQUIRED ACTUAL NOTICE TO THE PLAINTIFFS BY THE CITY.

### A.    Actual Notice to All Parties Was Required to Amend a Settlement Agreement and Consent Judgment.

*Boddie v. Connecticut*, 401 U.S. 371, 379-80 (1971) and *Mullane v. Central Hanover Bank*, 339 U.S. 306, 313-314 (1950) hold that an otherwise generally valid notice procedure may nevertheless fail to satisfy due process in certain situations because of the circumstances of the parties. *Mullane* held that while notice by publication was ordinarily sufficient, it was not sufficient where there were "known beneficiaries." While under ordinary circumstances the posting notice requirements of 24 V.S.A. § 4449(a) may satisfy procedural due process, they are not constitutionally sufficient where there are "known beneficiaries" to a settlement agreement and consent judgment[3] to which amendments were being proposed and/or were approved. In such situation *all* the parties to the settlement and the consent judgment were entitled to actual notice.

#### 1)    Fighting plaintiffs' "finality" interests with a "finality" born of nondisclosure: use of an *ex parte* administrative proceeding to compromise plaintiff's administrative recourse and recourse to the Vermont courts.

The portal through which *res judicata* under the successive application doctrine in zoning cases must be asserted procedurally is via the mechanisms provided by the

---

[3] See the signature of the Burlington City Attorney on Attachment #4, the *Stipulated Final Facts Supporting Final Judgment* submitted to the Environmental Division whose ¶1 references the "settlement regarding issues in dispute in this docket."

14

Planning Act: administrative appeal to the DRB, 24 V.S.A. § 4465, appeal to the Environmental Division, 24 V.S.A. § 4471, and ultimately to the Vermont Supreme Court if necessary, V.R.E.C.P. 5(k). e.g. *Dunkin Donuts, supra* at ¶¶ 4-5, 12. The City here used an *ex parte* administrative amendment to defeat the plaintiffs' access these administrative and court procedures to vindicate their *Settlement Agreement* and the consent judgment by assertion of the successive application doctrine as did Cumberland Farms in *Dunkin Donuts*. It did not provide any actual notice to the plaintiffs that the amendments either had been applied for by BTC Mall Associates or approved. Instead it used the notice of 24 V.S.A. § 4449(b) which requires only "posting" notice of an action by the administrative officer. Because the City did not provide plaintiffs with actual notice, they were unaware of BTC Mall's or the City's actions, especially Barbara McGrew who was at the time wintering in Florida. This allowed the 15 day period to take the first step in that process -- an appeal of the administrative decision to the DRB provided by 24 V.S.A. § 4465(a) -- to slip by unnoticed.

Any collateral or other challenge to the zoning administrator's action is barred by 24 V.S.A. § §4472(d) if no timely appeal is taken to the DRB within 15 days of the administrative action as required by 24 V.S.A. § 4465(a). *In re Tekram Partners*, 2005 VT 92, ¶¶7-8, 178 Vt. 628; *Graves v. Town of Waitsfield*, 130 Vt. 292, 295 (1985). This holds even if the municipality acted without jurisdiction, *City of South Burlington, supra,* or where the administrator acted illegally or exceeded his/her authority. *Levy v. Town of St. Albans*, 152 Vt. 139 (1989). It applies even where, as here, there is a contract based claim based upon a settlement agreement because §4472(d) bars any "contest, either directly or indirectly, (to) the decision or act." *City of South Burlington, supra* at 588

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

["The broad and unmistakable language of this provision is designed to prevent *any* kind of collateral attack on a zoning decision that has not been properly appealed through the mechanisms provided by the municipal planning and development statutes"].

If allowed to stand, this maneuver would compromise the plaintiffs' ability to enforce the *Settlement Agreement* and the *Judgment Order* through "the mechanisms provided by the municipal planning and development statutes," *City of South Burlington, supra*. At issue is the integrity of the land use appeal system, whether to enable a practice of "bait and switch" permitting whereby the initial permit appeal is "merely a prologue to continued applications for permit amendments" – now issued administratively on an *ex parte* basis -- which reduce or erode the original permit conditions, the very practice condemned by *Hildebrand* and *Stowe Club Highlands, supra* at 294; *In re Lathrop*, *supra* at ¶¶65-66. Because 42 U.S.C. § 1983 "is not dependent upon the zoning appeal mechanism set out in 24 V.S.A. § 4472," *Harvey, supra* at 83,[4] the plaintiffs' only recourse now is under federal law, to invalidate that action for violation of procedural due process.

### 2)      The posting notice provided also mislead by omission.

The posting notice employed also was defective because it mislead by omission. The Burlington Comprehensive Development Ordinance effective January 12, 2018, requires that the posted permit notice "shall have sufficient detail to inform the public of

---

[4] Moreover the Environmental Division of the Vermont Superior Court has limited jurisdiction, 4 V.S.A. § 34. That does not include jurisdiction to hear §1983 claims. Plaintiffs have elected to pursue that recourse here in Federal Court as is their right to do. *Patsy v. Board of Regents*, 457 U.S. 496, 500-503 (1982); *Mitchum v. Foster*, 407 U.S. 225, 242 (1972) [the very purpose of §1983 was to impose the federal courts between the states and the people as guardians of the people's federal rights].

16

(the) proposed scope of the project…" [**ARTICLE 3 APPLICATIONS, PERMITS, AND PROJECT REVIEWS Sec. 3.2.9 Zoning Permits** subsection **(c) Posting of Permit-Administrative Officer** published by the City of Burlington on the Internet at https://burlingtonvt.gov/PZ/CDO]. Burlington's Director of Planning David White admitted in his written communication to the City Council on April 16, 2018 that that the parking floor area was being "reduced by +- 50,000 square feet overall…" Yet the "Project Description" in the Zoning Permit issued by Mr. White's Department made no mention of any reduction in parking floor space.

> Project description:  Amendment to 17-0662CA/MA: Addition of 16 residential units on the east and west elevations at level 2, 3, and 4 reflected in exterior revisions and floorplans.  Elimination of awning at retail. Parking layout revision.

**B.      Actual Notice Required No More Than a Letter to the Plaintiffs.**

*Mennonite Board of Missions v. Adams,* 462 U.S. 791 (1983) required actual notice by the City to plaintiffs of the proposed and approval of the administrative amendments, at minimum by first class mail. Prior to an action that will affect an interest in life, liberty, or property protected by the Due Process Clause, notice must be provided to parties that is reasonably calculated under all of the circumstances to apprise interested parties whose names and addresses are known or reasonably ascertainable of the pendency of the action and afford them of an opportunity to present their objections such as by personal service or mailed notice. *Id.* c.f. *Mullane, supra.*  Also *see Weiner v. City of New York*, 852 F.2d 646, 650 (2nd Cir. 1988) [under ordinary circumstances notice sent by ordinary mail is deemed reasonably calculated to inform interested parties that their property rights are in jeopardy]. Such actual notice is required irrespective of the parties'

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

sophistication and have available to them other means to ascertain that proceedings have been initiated.

> More importantly, a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation … (I)t does not follow to say that the State may forego even the modest administrative burden of providing notice by mail to parties who are particularly resourceful. Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of ascertainable. *Mennonite Board* at 799 -800.

It would be a perverse result for Vermont law to give the plaintiffs the right to protect the bargained-for conditions contained in their settlement agreement and consent judgment, but to deny them actual notice that such amendments are being sought by the developer and considered by the City. "The right to be heard is worth little unless one is informed that the matter is pending and one can choose 'whether to appear, or default, or acquiesce, or contest.'" *Town of Randolph v. White*, 166 Vt. 280, 283 (1997) quoting from *Mullane, supra.*

**Relief Requested: To Hit the "Reset" Button.**

The only relief that will ensure that the plaintiffs can proceed with their challenge to these *ex parte* amendments in the face of §4472(d) is a federal court order under § 1983 and *Harvey, supra* invalidating them on due process grounds. That will allow a properly noticed action with opportunity for the plaintiffs to appeal to the DRB and if necessary to the Superior Court Environmental Division and the Vermont Supreme Court.

Therefore plaintiffs require a declaratory judgment order under the federal Civil Rights Act, 42 U.S.C. §1983, that

Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com

(i) the City's failure to provide them with actual notice of BTC Mall's permit amendments application and timely notice of the City's approval of them violated the Due Process clause of the 14th Amendment;

(ii) the February 23, 2018 permit amendments are consequently unlawful and void; and

(iii) due process requires the City in the future to provide the plaintiffs with actual notice of any proposed future local land use amendments to the project, with timely actual notice of any administrative action taken on the amendment applications, and timely actual notice of any applications for certificates of occupancy, all sufficient to allow plaintiffs to exercise their full rights to contest same under 24 V.S.A. § 4472 or otherwise.

Dated at Burlington, Vermont this 22nd day of May, 2018.

John L. Franco, Jr.
Attorney for Plaintiffs

19