UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| BARBARA MCGREW, LYNN MARTIN, MICHAEL LONG and STEVEN GOODKIND,<br><br>      Plaintiffs<br><br>      v.<br><br>CITY OF BURLINGTON, VERMONT, DEVONWOOD INVESTORS, LLC and BTC MALL ASSOCIATES, LLC<br><br>      Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 5:18 cv-58<br>)<br>)<br>)<br>)<br>)<br>) |

### DEVONWOOD INVESTORS, LLC'S AND BTC MALL ASSOCIATES, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Defendants Devonwood Investors, LLC and BTC Mall Associates, LLC (collectively, "BTC") respectfully submit the following Reply Memorandum in support of BTC's Motion to Dismiss filed May 15, 2018.[1]

The City of Burlington's Zoning Administrator gave published notice of BTC's application to amend the zoning permit for its 75 Cherry Street redevelopment project in

---

[1] Plaintiffs style their Opposition to BTC's Motion to Dismiss as a "Cross Motion in Support of Partial Summary Judgment." But BTC did not file a motion for summary judgment. In considering a motion to dismiss under Federal Rule of Civil Procedure (FRCP) 12(b)(6), the court may consider documents incorporated by reference in the complaint, as well as documents "the complaint relies heavily upon in terms and effect, thereby rendering the document integral to the complaint." *Difolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010). BTC attached three documents to its Motion to Dismiss, all of which are referenced in and integral to Plaintiffs' Complaint, namely, the Settlement Agreement to which BTC and Plaintiffs are parties, and the Stipulated Findings of Fact Supporting Final Judgment, and proposed Judgment Order Plaintiffs and BTC filed in the Superior Court, Environmental Division. Since the Court may and should consider these documents in reviewing BTC's Motion to Dismiss, BTC did not convert its Motion to Dismiss to a motion for summary judgment under FRCP 12(d) by providing copies of them to the Court, and there is no Motion for Summary Judgment against which Plaintiffs could "cross move."

compliance with all applicable provisions of Vermont's Planning and Development Act and the

City's Comprehensive Development Ordinance ("CDO").  Plaintiffs' Complaint does not allege

that the Zoning Administrator violated the Act or the CDO.[2]  Rather, Plaintiffs argue in

opposition to BTC's Motion to Dismiss that they were entitled to actual notice of the permit

amendment application, which the Act and the CDO do not require, because they have a

Fourteenth Amendment property interest arising out of (1) a Settlement Agreement between

Plaintiffs and BTC, and (2) the finality of zoning permit conditions under the "successive

application doctrine."  *See generally* Pls.' Cross Mot. in Supp. of Partial Summ. J. [Doc. 9]

(hereinafter, the "Opposition").  As explained below, Plaintiffs have no property interest

protected by the Due Process Clause that derives from either the Settlement Agreement or the

successive application doctrine.  As Plaintiffs fail to establish a valid property interest, the court

must dismiss the Complaint for failure to state a claim.

I.      **Plaintiffs have no property interest derived from the Settlement Agreement or the Judgement Order.**

Plaintiffs claim the approval of BTC's zoning permit amendments deprived them of a

property interest in the application of zoning permit conditions described in a Settlement

Agreement with BTC (Exhibit 1 to BTC's Motion to Dismiss), which derives from that

Agreement and the Judgement Order effectuating it (Exhibit 3 to BTC's Motion of Dismiss).

Plaintiffs' argument appears to be based primarily on the false premise that the Settlement

Agreement encompassed BTC's implied promise never to apply for zoning permit amendments.

---

[2] Plaintiffs Cross Motion in Support of Partial Summary Judgment filed May 22, 2018 does argue that the posted notice was defective because it provided insufficient detail regarding the proposed permit amendments, but this allegation is not stated in the Complaint and the Court must therefore disregard it in deciding BTC's Motion to Dismiss.

As the City correctly observes in its Motion to Dismiss, however, the mere existence of an agreement between private parties does not create an independent property interest protected by the Fourteenth Amendment.[3] *See* City of Burlington's Motion to Dismiss [Doc. 13] at 7. Indeed, not every contract *to which the government is a party* creates such an interest. Rather, "contractual property protected as against a contracting government requires some independently imposed or agreed upon limitation upon the government's freedom to act." *Id.* (quoting *Caesars Massachusetts Mgmt. Co., LLC v. Crosby*, 778 F.3d 327, 333 (1ˢᵗ Cir. 2015).

Here, the Settlement Agreement does not limit the City's ability to approve amendments with respect to parking or other issues or prohibit BTC from seeking such amendments. On the contrary, the Agreement expressly contemplates the possibility of future amendments in providing that the "the total number of automobiles accommodated will depend on engineering and other constraints." Settlement Agreement ¶3.

Moreover, even if a due process claim could be based on *procedural* interests (which is not possible, *see* BTC Mot. to Dismiss at ¶7-8), the Settlement Agreement did not require anyone to give Plaintiffs individual notice of any permit amendment application, grant Plaintiff the right to pre-approve such an application, or otherwise allow Plaintiffs any special opportunity to participate in the permit amendment process. Plaintiffs could have negotiated Settlement Agreement terms requiring BTC to give them actual notice of any permit amendment applications, or even a right to pre-approve such applications, but did not.[4] Thus, while

---

[3] Notably, Plaintiffs have not cited a single decision in which a constitutional property interest was derived from a settlement agreement between two private parties.

[4] BTC could not have agreed that it would never apply for permit amendments given the possibility that "engineering and other constraints" might necessitate them over the lengthy course of an extensive and complex redevelopment project.

Plaintiffs claim an interest in "enforcing the benefit of their bargain," they are actually asking this Court to give them the benefit of a bargain they did not make.

Plaintiffs' reliance on *In re. Dunkin Donuts S.P. Approval*, 2008 VT 139, 185 Vt. 583, for the proposition that "a party to a stipulated zoning judgment [should] not be allowed to undo that agreement," *see* Opp. at 7, is misplaced.  Indeed, *In re Dunkin Donuts* actually supports BTC's position.  The owner of the Dunkin Donuts restaurant at issue in that matter, Mr. Quadros, settled a dispute with an adjacent property owner by stipulating to a court order approving the site plan for the restaurant, which provided that there would be no drive-through service window.  The case concerned whether he was required to seek relief from the terms of that order under Vermont Rule of Civil Procedure 60(b) before applying for municipal approval of a drive-through service window.  The Vermont Supreme Court ruled that "Quadros was free to file a successive application with the Review Board without first seeking Rule 60(b) relief" under the common law "successive application doctrine."  *In re. Dunkin Donuts S.P. Approval,* 2008 VT 139, ¶13, 185 Vt. at 586.

Plaintiffs cite Justice Burgess' dissenting opinion[5] arguing that a party to a stipulated judgment should not be allowed to seek permit amendments inconsistent with that agreement without the other parties' consent.  *Id.* ¶14-16, 185 Vt. at 586-87.  BTC does not agree or concede that the project changes the permit amendments authorized are inconsistent with the Settlement Agreement.  But even if they were, the Vermont Supreme Court has never adopted

---

[5] Plaintiffs refer to Justice Burgess' opinion as a "concurring opinion."  Opp. at 7.  In fact, Justice Burgess concurred in part and dissented in part.  He concurred in that he agreed "the doctrine of successive application, rather than Rule 60, should govern disposition of renewed permit applications after a judgment in a contested case."  *In re. Dunkin Donuts,* 2008 VT 139, ¶14.  He dissented in arguing the Court should "go further" to prohibit the drive-through window permit application without the consent of the other party to the prior stipulated judgment.  *Id.* ¶¶ 14-16.  Justice Burgess' dissent on that point is not the law in Vermont.

Justice Burgess' position, which therefore is not the law in Vermont.[6]  The majority in the *In re Dunkin Donuts* case expressly held that a settlement agreement and stipulated court order *do not* preclude a subsequent permit amendment application pertaining to an issue addressed in the agreement and order.

In sum, even if a zoning settlement between private parties could create a property interest protected under the Due Process Clause, the interest Plaintiffs assert in this matter does not derive from its Settlement Agreement with BTC, or the Judgment Order effectuating it, as that Agreement and Order did not preclude BTC from seeking permit amendments.  The application for and approval of BTC's permit amendments did not deprive Plaintiffs of any property interest derived from the Agreement or the Judgment Order, nor did it "amend," "modify," "terminate," or breach the Settlement Agreement.

**II.    The "successive application doctrine" does not afford Plaintiffs a protected property interest.**

Plaintiffs also cite *In re Dunkin Donuts* for the novel argument that they have a property interest in finality of the zoning permit conditions described in the Settlement Agreement under the successive application doctrine, which provides that  "a zoning board or planning commission may not entertain a second application concerning the same property after a previous application has been denied, unless a substantial change of conditions ha[s] occurred or other considerations materially affecting the merits of the request have intervened between the first and second applications."  *In re Dunkin Donuts*, 2008 VT ¶ 8.

This argument fails under Second Circuit precedent addressing municipal land use regulation, which provides that no property interest protected by the 14th Amendment derives

---

[6] There are good reasons for this.  Vermont law recognizes that changes in circumstances may justify or necessitate changes in a permitted project.

from state or local law governing issuance of land use permits unless the regulatory outcome under those rules is nondiscretionary.  In *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54 (1985), the plaintiffs below claimed a right to conduct an automobile business in a particular location under the governing land use statutes, and further claimed that the local Zoning Board's denial of a necessary permit in a proceeding corrupted by "politically-influenced procedural irregularities" deprived them of property rights in derogation of the 14th Amendment.  *Id*. at 57-58.  The Court found that although members of the Zoning Board may have "engaged in egregious misconduct," there was no assurance that they would have issued the requested permit if they had properly exercised their discretion.  *Id.* at 59.  Since plaintiffs "were not entitled as a matter of right to the [permit] sought by them . . . they lack any property interest protectible under the Due Process Clause."  *Id.* at 60.

The Second Circuit adopted this rule in the land use permitting context in recognition that a federal court "is a tribunal of limited jurisdiction," which "should not sit as a zoning board of appeals," and "Section 1983 . . . does not guarantee a person the right to bring a federal suit for denial of due process in every proceeding in which he is denied a license or a permit."  *In re. Yale Auto Parts,* 758 F.2d at 58.  The court further noted that allowing every person dissatisfied with the outcome of zoning permit proceedings to bring a federal suit for denial of due process would "swell[ ] our already overburdened federal court system beyond capacity."  *Id.*

In subsequent cases, the Second Circuit has elaborated that a claim of entitlement to approval of a land use permit constitutes a property interest protected by the Due Process Clause only when the discretion of the issuing agency is so narrowly circumscribed that approval is virtually assured.  *RRI Realty Corp. v. Incorporated Village of Southhampton,* 870 F.2d 911, 918 (2d Cir. 1989).  The issue of whether an individual has such a property interest is a question of

law since the entitlement analysis focuses on the degree of official discretion and not on the probability of its favorable exercise. *Gagliardi v. Village of Pawling,* 18 F.3d 188, 192 (2d Cir. 1994).

Pursuant to this same rule and analysis, there is no protected property interest in the enforcement of local zoning ordinances against another person's property, or specifically in the denial of a zoning permit for use of another person's property where the municipality has discretion in the matter. *Gagliari,* 18 F.3d at 193 (grant of building permit and variances to plaintiffs' neighbor did not infringe upon any protected property interest where municipality had discretion in the matter); *Leland v. Moran,* 80 Fed. App'x 133 (2003) (plaintiff has no protected property interest in enforcement of local zoning ordinances against another person's property); *Puckett v. City of Glen Cove,* 631 F. Supp. 2d 226, 238-39 (E.D.N.Y., 2009) (plaintiff has no constitutionally protected property interest in the denial of a building permit to her neighbor where "[the municipality's] discretion in the permit process negates any holding that a property right to such a . . . denial exists.").

Plaintiffs argue that they have a property interest derived from the successive application doctrine because they were entitled to "finality" of the permit conditions described in the Settlement Agreement and Judgment Order, and the permit amendment application should have been denied under the doctrine.  BTC does not concede that the successive application doctrine governed consideration of its permit amendment application. But even if it did, Plaintiffs' argument that a property interest derives from the doctrine fails under the above-cited precedent, because application of the doctrine would involve consideration of multiple factors pertaining to whether "considerations materially affecting the merits of [the permit amendment request] have intervened between the first and second applications."  *In re Dunkin Donuts*, 2008 VT ¶ 8.  Since

the decision maker's discretion under the doctrine is not "so narrowly circumscribed" that the outcome "is virtually assured," the doctrine does not give rise to property interests protected by the 14th Amendment in the approval or disapproval of permit amendments. *RRI Realty Corp.*, 870 F.2d at 918.

## <u>CONCLUSION</u>

For all of the foregoing reasons and for the reasons discussed in BTC's Motion to Dismiss, the Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim.

Dated at Burlington, Vermont this 4th day of June, 2018.

DUNKIEL SAUNDERS ELLIOTT
RAUBVOGEL & HAND PLLC

By:  /s/ Karen L. Tyler
        Brian Dunkiel, Esq.
        Karen Tyler, Esq.
        Jonathan Rose, Esq.
        91 College Street
        Burlington, Vermont 05401
        (802) 860-1003
        bdunkiel@dunkielsaunders.com
        ktyler@dunkielsaunders.com
        jrose@dunkielsaunders.com

        Attorneys for Defendants BTC Mall
        Associates, LLC and Devonwood Investors,
        LLC