UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| BARBARA MCGREW, LYNN | * | Civil Action No. 5:18 cv 58 |
| MARTIN, MICHAEL LONG, | * | |
| and STEVEN GOODKIND, | * | |
|     Plaintiffs | * | |
| | * | |
| v. | * | |
| | * | |
| CITY OF BURLINGTON, | * | |
| VERMONT, DEVONWOOD | * | |
| INVESTORS, LLC, and | * | |
| BTC MALL ASSOCIATES, LLC, | * | |
|     Defendants | * | |

**PLAINTIFFS' OPPOSITION TO BTC MALL'S AND DEVONWOOD'S
MOTION TO COMPEL**

**I.      INTERROGATORY #8 – THE 24 V.S.A. § 4465 (b)(4) PETITONERS' KNOWLEDGE OF THE PERMIT AMENDMENT.**

Less than a full business day following the parties' discovery conference the plaintiffs reconsidered their position and without waiver of their objections are undertaking an effort to respond to the request. The plaintiff's communication (Attachment #1) was made about the same time the defendant's filed their *Motion*, crossing in cyberspace if you will. That amended response (Attachment #2) was served the next business day, the day after Thanksgiving.

**II.     REQUEST TO PRODUCE #4 – MEDIATED SETTLEMENT NEGOTIATION DOCUMENTS.**

The disputed discovery involves a claim by Devonwood and BTC Mall Associates of ambiguity in certain provisions of the *Settlement Agreement*. They seek to discover the subjective intent of the parties to the *Agreement* with document discovery about communications made during the negotiations of that mediated *Agreement*.

1

Plaintiffs oppose the defendants' motion to compel this discovery and seek a protective order under F.R.Civ.P. 26(1) also forbidding the disclosure or discovery of this material by deposition or other means.

### A.     BTC Mall/ Devonwood are in Breach of their *Mediation Agreement*.

BTC's and Devonwood already stand charged by the plaintiffs with having breached their *Settlement Agreement*. The discovery request here breaches their May 5, 2017 *Mediation Agreement* (Attachment #3) as well which was entered into before any settlement negotiations commenced. It provides at ¶2 <u>Confidentiality</u> that

> This is a settlement negotiation and will be strictly confidential. No party may disclose any statement made by any other participant in the mediation. Mediation discussions, written and oral communications, proposals, and any unsigned settlement agreements shall not be admissible in any court proceeding.

Parties cannot disregard to such protective terms agreed to when setting up the mediation. *In re Teligent, Inc.*, 640 F.3d 53, 56-58 (2nd Cir. 2011). BTC and Devonwood are estopped by operation of this agreement.

### B.     Disclosure is Also Barred by Federal Rules of Evidence 501 as Confidential Mediation Communications.

Federal common law contemplated by Federal Rules of Evidence 501 also recognizes confidentiality as an important feature of mediation and other dispute resolution generally because it promotes the free flow of information that may result in a settlement. "We vigorously enforce" the confidentiality provisions of alternative dispute resolution because "that confidentiality is essential to the vitality of its effectiveness." *Id.* at 57-58 quoting *Lake Utopia Paper Ltd v. Connelly Containers, Inc.*, 608 F.2d 928, 930 (2nd Cir. 1979) c.f *Calka v. Kucker Kraus and Bruh*, 167 F.3d 144, 146 (2nd Cir. 1999).

The party seeking the disclosure of confidential mediation communications must demonstrate (i) a special need for the material, (ii) resulting unfairness from the lack of its discovery, and (iii) that the need for the evidence outweighs the interest in maintaining confidentiality. *Teligent, supra.* The Second Circuit drew this standard from a variety of sources, including the ALI's Uniform Mediation Act upon which the Vermont Uniform Mediation Act is based, as well as statutory and other sources, including the Alternative Dispute Resolution Act. 28 U.S.C. § 651 et seq. Section 651 of the ADRA authorizes the establishment of ADR programs. Section 652(d) provides for the confidentiality of the ADR process and prohibits disclosure of confidential dispute resolution communications. Relatedly this Court's own Local Rule16.1l treats the ENE process "as a settlement negotiation under Federal rules of Evidence 408 and therefore confidential."

This all bespeaks a body of federal common law under Rules of Evidence 501. It renders the documents and communications requested by BTC Mall and Devonwood confidential, inadmissible, and not discoverable. Indeed, if the federal courts failed to recognize the confidentiality of mediations conducted as part of state court proceedings, confidence in them would be completely undermined having a devastating impact on their use and effectiveness.

For the reasons discussed next, BTC Mall/Devonwood have not demonstrated a special need, an unfairness from the lack of discovery, or a need which outweighs the interest in maintaining confidentiality. *Teligent, supra,* c.f. *AccordIridium India TelecomLtd. v. Motorola, Inc.*, 165 Fed. Appx. 878, 880 (2nd Cir. 2005) and *SEC. v. The Street.Com,* 273 F3d 222, 228 (2nd Cir. 2001).

3

**C.   Subjective Undisclosed Intent of Parties to a Contract is Irrelevant and Inadmissible and Therefore Not Discoverable Under F.R.Civ. P. 26(b)(1).**

A party's subjective, undisclosed intent is immaterial to the interpretation of an agreement. The objective to be attained in construing a contract is to ascertain the meaning and intent of the parties *as expressed in the language used* and to give effect to such intent. The court will not attempt to ascertain the actual mental processes of the parties entering into the particular contact; rather the law presumes that the parties understood the import of their contract and that they had the intention which its terms manifest. 17A Am.Jur. 2d Contracts §352; *General Warehousemen and Employees Union Local No. 636 v. J.C. Penney Company*, 484 F. Supp. 130, 133 (W.D. Pa. 1980) [It is the manifested mutual assent rather than the mental assent that is the essential element. The test for interpretations of an offer or acceptance is not what the party making it thought it meant, but what his or her manifestion of agreement was. An offer is judged by its objective manifestation, not by the subjective interpretations or intentions of the offeror, as is true as well for the acceptance]; *Fassler v. Okemo Mountain, Inc.*, 148 Vt. 538, 542 (1987) [The intent of the parties is to be determined from the words used in the document. The controlling fact is expressed intent. Unexpressed intent is unavailing]; *Miller v. Flegenheimer*, 2016 VT 125 ¶15 [It is never enough that the parties think they have made a contract; they must express their subjective intent in a manner that is capable of understanding]; *Quenneville v. Buttolph*, 2003 VT 82, ¶ 15, 175 Vt. 444 [A party will not be permitted to give some mental reservation at a later time]. Because it is the parties' expressed intent as found in the *Settlement Agreement* which governs,

4

discovery purportedly aimed at the subjective intent of individual parties is irrelevant and therefore not discoverable.

Determining whether there is an ambiguity in the contract language does not change this. The objective in contract construction is to determine whether a contract is ambiguous, and if so, to then construe the ambiguity. *Isbrandtsen v. North Branch Corporation*, 150 Vt. 575, 577 (1988). The presence of an ambiguity is a matter of law for the court to decide. *Id.* Ambiguity exists where the language will allow more than one reasonable interpretation. *Id., O'Connell-Starkey v. Starkey*, 2007 VT 128, ¶8, 183 Vt. 10.

There is no ambiguity here because by Devonwood/BTC Mall's own previous judicial admissions in its court submissions, the *Settlement Agreement* is unambiguous. ["BTC has argued in its pending Motion to Dismiss that the meaning of the Settlement Agreement as it pertains to Plaintiffs' alleged property interest is clear in the plain language of the Agreement." *Memorandum of Law* P.6 (Document 20) and *Declaration of Karen Tyler* ¶5, (Document No. 20-1)]. Given these judicial admissions, there is no basis for the proposed discovery.

Moreover, if there were an ambiguity, extrinsic evidence may not be used to establish "the parties' intent" as the defendants seek to do here. The use of extrinsic evidence is limited to examining the *circumstances* of the making of the contract to help ascertain whether there is an ambiguity. *Isbrantsen, supra*. The court's duty is to construe the document, and not speculate about intentions or to rewrite it. *Appeal of the Estate of Holbrook*, 2016 VT 13, ¶30, 201 Vt. 254. Here the circumstances surrounding the making are readily provided by the Vermont Superior Court Environmental

5

Division's record of the appeal which it settled. That includes the Development Review Board decision appealed from, the *Statement of Questions* filed by the appellants, the various motions and memoranda filed, and the Environmental Division's interlocutory rulings.  In addition there is the record of the status conference held with that Court on June 27, 2017 regarding the *Settlement Agreement* and the proposed consent judgment which the Court later approved. All these materials are the subject of judicial notice by this Court. The circumstances surrounding the settlement is also supplied by the record of the Vermont Superior Court Civil Division litigation which was also settled here. BTC Mall and Devonwood were parties to both proceedings.

That is an entirely different matter than considering the negotiations communications of the parties to establish their "real" subjective intentions. The parol evidence rule forbids use of extrinsic evidence as a substitute for the written agreement. *Hall v. State*, 2012 VT 43, ¶29, 192 Vt. 63 citing *Tilley v. Green Mountain Power*, 156 Vt. 91 (1997) [the court may not substitute a verbal understanding for the written language, because that would comprise an oral contractual term which contradicted the later written expression of the agreement]. The mediated settlement discussions leading up to the *Settlement Agreement* are irrelevant and inadmissible parol evidence.

    **D.**    **The Requested Medications Communications Also Include a Subset of Attorney-Client Communications and Communications Containing or Revealing Privileged Attorney Work-Product.**

An examination of all the settlement communications also necessarily implicates the advice given by counsel.  The *Settlement Agreement* explicitly recognizes at ¶¶ 11and 12 that the parties were represented and advised by counsel with respect to the drafting of the *Settlement Agreement*.

> 11. The Parties to this Settlement Agreement have cooperated in the drafting and preparation of the Settlement Agreement. Therefore the Settlement Agreement shall not be construed against either party on the basis that the party was the drafter.
>
> 12. Each Party to the Settlement Agreement acknowledges that it has received independent legal advice from counsel, or has had the opportunity to seek advice from counsel, with respect to this Settlement Agreement.

The discovery request therefore violates the attorney-client privilege and the related privilege of attorney work product because it involves their attorney's mental impressions, conclusions, opinions, or legal theories and advice communicated to them.

The attorney work product privilege is recognized by both the federal and Vermont law. *Hickman v. Taylor*, 329 U.S. 495 (1991); *Killington v. Lash*, 153 Vt. 628 (1990). At its core, the work product doctrine shelters the mental impressions of the attorney, providing a privileged area within which s/he can analyze and prepare his/her client's case. *U.S. v. Nobles*, 422 U.S. 225, 238-39 (1975). The disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the litigation is absolutely protected. *Pcolar v. Casella Waste Systems*, 2012 VT 58 ¶17, 192 Vt. 343.

### III. PRIVILEGE LOG.

Number 2 of the instructions in the defendants' *Requests for Production* (Attachment #4) required a document-by-document log identifying and enumerating of each specific communication or document claimed to be privileged or confidential. It is recognized where privilege or confidentiality are claimed this would in part identify the contents of each privileged communication and the persons involved in the communication and would itself compromise their confidentiality. It would tend to

disclose the pattern of their consultation and communications to opposing parties which would reveal to opposing parties aspects of their litigation strategy. *In re Imperial Corporation of America Related Litigation, Durkin v. Shields,* 174 F.R.D. 475, 477-79 (S.D. Ca. 1997), *SEC v. Thrasher*, 1996 WL 125601 (S.D. NY 1996); *St. John v. Napolitano*, 274 F.R.D. 12 (D.D.C. 2012).  Nowhere does Fed. R. Civ. Pro. 26(b)(5) mandate a document by document privilege log if a party seeks to withhold it on the basis of privilege or work product as noted by the Advisory Committee Notes of the 1993 amendment following Rule 26. *In re Imperial Corporation, supra.* Such disclosure could allow them to "reverse engineer" confidential information. See *Michael Long et al. v. City of Burlington and BTC Mall Associates, LLC.*, 2018 VT 103 ¶28 [disclosure of trade secrets could allow competitors to "reverse engineer" confidential information].

The plaintiffs properly objected to this request as instructed.  Even though the alternative of responding with a categorical privilege log was not provided in BTC's/Devonwood's instruction #2, on November 23, 2018 they in good faith supplemented their response with a categorical log which satisfied the requirements of *Thasher, supra*.

**IV.   FEE SHIFT REQUEST.**

It is generally recognized that where parties stake out legitimate positions, and the court grants in part and denies in part a motion to compel discovery requests, the courts generally conclude that justice requires that each party each party be responsible for its own fees and costs. *Benavidez v. Sandia National Labs*, 319 F.R.D. 696, 720 (2017). BTC/Devonwood's request is premature because the court has not yet decided the disputed discovery issue. Even if BTC/Devonwood's motion were completely successful,

8

the court would need to weigh substantial justification and whether the award would be unjust under Fed R. Civ.P. 37(a)(5)(A)(ii), (iii), and (B). If the decision were mixed, it must apportion the reasonable expenses for the motion under Rule 37(a)(5)(C).

Moreover the request for a fee shift is trumped by 42 U.S.C. § 1988. Section 1988 allows in §1983 civil rights cases a fee shift only on behalf of a prevailing party. There is yet no determination of prevailing party status. Moreover, under *Hughes v. Rowe*, 449 U.S. 5 (1980) prevailing defendants ordinarily are not to be awarded fees even if they prevail.

Dated at Burlington, Vermont this 25th day of November, 2018.

/s/ *John L. Franco, Jr.*
John L. Franco, Jr.
Attorney for Plaintiffs

9
Law Office of John L. Franco, Jr. 110 Main Street Burlington, Vermont 05401
(802) 864-7207
johnfrancolaw@aol.com